UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BARTON BROOKE MCCAULEY, JR.,

      Plaintiff,

v.                          Case No:   2:16-cv-584-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

## OPINION AND ORDER

This cause is before the Court on Plaintiff Barton Brooke McCauley, Jr.'s Complaint

(Doc. 1) filed on July 21, 2016.  Plaintiff seeks judicial review of the final decision of the

Commissioner of the Social Security Administration ("SSA") denying his claim for a period of

disability and disability insurance benefits.  The Commissioner filed the Transcript of the

proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the

parties filed legal memoranda in support of their positions.  For the reasons set out herein, the

decision of the Commissioner is **REVERSED AND REMANDED** pursuant to § 205(g) of the

Social Security Act, 42 U.S.C. § 405(g).

I.      **Social Security Act Eligibility, Procedural History, the ALJ's Decision, and
Standard of Review**

      A.      **Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason

of any medically determinable physical or mental impairment that can be expected to result in

death or that has lasted or can be expected to last for a continuous period of not less than twelve

months.  42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.

The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911. Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

**B.    Procedural History**

On May 21, 2013, Plaintiff filed an application for a period of disability, disability insurance benefits, and supplemental security income asserting an onset date of June 30, 2012. (Tr. at 222, 224). Plaintiff's applications were denied initially on August 14, 2013, (Tr. at 88-89), and upon reconsideration on October 2, 2013 (Tr. at 120-21). A video hearing was held before Administrative Law Judge ("ALJ") William F. Taylor on August 10, 2015. (Tr. at 41-69). The ALJ issued a partially favorable decision on August 25, 2015. (Tr. at 22-40). The ALJ also found that Plaintiff was not disabled prior to March 9, 2013, but became disabled on that date and has continued to be disabled through the date of the decision. (Tr. at 33). The ALJ found that Plaintiff was not disabled at any time through June 30, 2012, the date last insured. (Tr. at 33).

On June 2, 2016, the Appeals Council denied Plaintiff's request for review. (Tr. at 1-7). Plaintiff filed a Complaint (Doc. 1) in this Court on July 27, 2016. Defendant filed an Answer (Doc. 14) on October 12, 2016. The parties filed memoranda in support. (Docs. 21-22, 25). The parties consented to proceed before a United States Magistrate Judge for all proceedings. (*See* Doc. 19). This case is ripe for review.

### C.     Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that he is disabled. *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[1] An ALJ must determine whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has the residual functional capacity ("RFC") to perform his past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ found that Plaintiff met the insured status requirements through June 30, 2012. (Tr. at 29). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 29). At step two, the ALJ found that, since the alleged onset date of disability, June 30, 2012, Plaintiff suffered from the following severe impairment: hypertension. (Tr. at 29). Additionally, beginning on the established onset date of disability, March 9, 2013, the ALJ found that Plaintiff suffered from the following severe impairments: "hypertension, sleep apnea, atrial fibrillation, GI hemorrhage, late effects of CVA, cubital tunnel syndrome and gout." (Tr. at 29).[2] At step three, the ALJ

---

[1] Unpublished opinions may be cited as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

[2] "GI" is an acronym for gastrointestinal. "CVA" is an acronym for cerebrovascular accident.

determined that Plaintiff did not have an impairment or combination of impairments that meets

or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart.

P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and

416.926).  (Tr. at 30).

Based on the evidence, the ALJ determined that, prior to March 9, 2013, the date Plaintiff

became disabled, Plaintiff had the residual functional capacity ("RFC"):

> to lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or
> walk for 6 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; no
> work at heights or near bodies of water unless protected from falls; no work with
> or near dangerous and/or moving machinery and equipment; no climbing of ladders
> ropes or scaffolds; can operate a motor vehicle; and avoid concentrated exposure
> to extreme heat and humidity.

(Tr. at 30).  Additionally, beginning on March 9, 2013, the ALJ determined that Plaintiff had the

RFC:

> to lift and/or carry, push and/or pull 10 pounds occasionally and less than 10 pounds
> frequently; sit for 6 hours in an 8-hour workday; stand and/or walk for 2 hours in
> an 8-hour workday; use of feet and hands for operation of controls; no climbing of
> ladders ropes or scaffolds; occasionally balance kneel, stoop crouch and never
> crawl; frequently climb stairs and ramps; avoid concentrated exposure to
> vibrations; no work at height or near bodies of water unless protected from falls; no
> work with or near dangerous and/or moving type of equipment or machinery; no
> limits on hearing seeing or speaking; avoid concentrated exposure to extreme heat
> and humidity; occasionally finger feel and handle; and no operation of motor
> vehicles to include forklifts.

(Tr. at 32).

At step four, based on the testimony of a vocational expert ("VE"), the ALJ determined

that, prior to March 9, 2013, Plaintiff was capable of performing his past relevant work.  (Tr. at

32).  Specifically, the ALJ found that Plaintiff could perform his past relevant work as a:

1) *Life Insurance Agent*, DOT #250.257-010, which is performed at the light
   exertional level and has an SVP of 6 (Skilled); and,

2) ***Financial Advisor***, DOT #250.257-014, which is performed at the sedentary exertional level (light, as performed) and has an SVP of 8 (Skilled).

(Tr. at 32).[3]  The ALJ found that this work did not require the performance of work-related activities precluded by Plaintiff's RFC.  (Tr. at 33).  Moreover, in comparing the Plaintiff's RFC with the physical and mental demands of Plaintiff's past relevant work, the ALJ found that Plaintiff was able to perform it as generally performed for the time period prior to March 9, 2013.  (Tr. at 33).

Nonetheless, for the time period beginning on March 9, 2013, the ALJ found that Plaintiff's RFC prevented him from being able to perform past relevant work.  (Tr. at 33). Moreover, at step five, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there are no jobs that exist in significant numbers in the national economy that Plaintiff can perform after March 9, 2013.  (Tr. at 33).

In sum, the ALJ found that Plaintiff was not disabled prior to March 9, 2013, but became disabled on that date and has continued to be disabled through the date of the decision.  (Tr. at 33).  The ALJ further found that Plaintiff was not under a disability at any time through June 30, 2012, the date last insured.  (Tr. at 33).

### D.    Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. §405(g).  Substantial evidence is more than a scintilla; *i.e.*, the evidence

---

[3] "SVP" is an acronym for Specific Vocational Preparation code.  "DOT" is an acronym for the *Dictionary of Occupational Titles*.

must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine reasonableness of factual findings).

## II.        Analysis

Plaintiff raises four issues on appeal:

(1) The ALJ committed reversible error in failing to comply with Social Security Ruling 83-20 in not calling a medical expert to assist in determining the onset date of Mr. McCauley's impairments.

(2) The ALJ reversibly erred by failing to properly evaluate Mr. McCauley's subjective complaints and credibility for the period prior to March 9, 2013.

(3)  The ALJ's finding that prior to March 9, 2013, Mr. McCauley could perform the exertional demands of light work is not supported by substantial evidence.

(4) The ALJ's finding that, prior to March 9, 2013, Mr. McCauley could return to his past relevant work as a life insurance agent or financial advisor as such work is generally performed, is not supported by substantial evidence.

(Doc. 21 at 1). The Court addresses these issues below.

**A.        Whether the ALJ Erred by Failing to Obtain a Medical Expert**

The Court first addresses Plaintiff's contention that the ALJ erred by failing to comply with Social Security Ruling ("SSR") 83-20 by not calling a medical expert to assist in determining the onset date of Plaintiff's impairments.  (Doc. 21 at 10).  Plaintiff argues that SSR 83-20 sets forth the policy for establishing the onset date for disabilities of non-traumatic origin and of a slowly progressive nature.  (*Id.*).  Plaintiff argues that he had several impairments that are progressive in nature before the date last insured.  (*Id.*).  Nonetheless, Plaintiff contends that the ALJ "failed to make a proper determination of onset for the period prior to the established onset date.  Indeed, the ALJ's finding that the only severe impairment present prior to March 9, 2013 was hypertension is not supported by the evidence of record."  (*Id.* at 13).  Plaintiff points to his plantar fasciitis, gout, sleep apnea, and atrial fibrillation as being conditions of non-traumatic origin and of a slowly progressive nature.  (*See id.* at 13-14).  Plaintiff argues that, given the ALJ's finding that he is currently disabled, "the ALJ should have called a medical advisor to review the earlier evidence of record and render an opinion regarding the onset date of his impairments as required by SSR 83-20."  (*Id.* at 15).

Defendant disagrees, arguing that "the medical evidence before the ALJ was sufficient for him to assess Plaintiff's condition at the time of his alleged onset date (and date last insured)."  (Doc. 22 at 7).  Defendant argues that Plaintiff failed to meet his burden of showing he was disabled prior to the date last insured.  (*Id.*).  Further, Defendant argues that "Plaintiff's argument that the ALJ failed to account for his plantar fasciitis, recurrent gout, sleep apnea, and history of atrial fibrillation" is "unavailing."  (*Id.* at 8).  Defendant contends that "Plaintiff did not list any of those impairments in his application for disability when asked to '[l]ist all of the physical or mental conditions . . . that limit your ability to work.'"  (*Id.* (citing Tr. at 262)).

Defendant further states that "Plaintiff testified that he was not diagnosed with atrial fibrillation prior to his stroke in March 2013 and that he did not notice symptoms or warnings signs in advance of his stroke." (*Id.* (citing Tr. at 60)). Moreover, Defendant argues that Plaintiff "indicated that his sleep apnea was effectively treated and that he felt rested in the morning. (*Id.* (citing Tr. at 61-62)). In any event, Defendant argues that "the ALJ specifically discussed Plaintiff's plantar fasciitis, gout, sleep apnea, and atrial fibrillation in assessing Plaintiff's RFC." (*Id.*). Thus, Defendant contends that the ALJ properly assessed Plaintiff's RFC. (*Id.*).

Moreover, as to the specific issue of whether a medical expert should have been called to assist in determining the onset date of Plaintiff's impairments, Defendant argues that "the ALJ reviewed numerous medical records from the period prior to March 9, 2013, which document several medical examinations during the relevant period." (*Id.* at 9 (citing Tr. at 30-32)). Defendant argues that "[t]hese records show minimal complaints and generally unremarkable objective findings," and, thus, "the ALJ had no need to 'infer' the established onset date" pursuant to SSR 83-20. (*Id.*).

In reviewing this issue, the Court notes that "Social Security Rulings are agency rulings published under the Commissioner's authority and are binding on all components of the Administration." *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 775 (11th Cir. 2010) (citing *Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990)). While Social Security Rulings are not binding on the Court, they are nevertheless afforded "great respect and deference, if the underlying statute is unclear and the legislative history offers no guidance." *Id.* (citing *B. ex rel. B. v. Schweiker*, 643 F.2d 1069, 1071 (5th Cir. 1981)).

For disabilities of nontraumatic origin, SSR 83-20 states, in pertinent part:

> With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling.

Determining the proper onset date is particularly difficult, when, for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available. In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process.

1983 WL 31249, at *2. Additionally, when precise evidence is not available, SSR 83-20 states:

In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred. If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.

*Id.* at *3.

"The plain language of SSR 83-20 indicates that it is applicable only after there has been a finding of disability and it is then necessary to determine when the disability began." *Caces v. Comm'r, Soc. Sec. Admin.*, 560 F. App'x 936, 939 (11th Cir. 2014). Nevertheless, SSR 83-20 specifically contemplates that an ALJ need not obtain a medical expert if the ALJ has a "legitimate medical basis" for determining the onset date. *See* 1983 WL 31249, at *3.

A review of the relevant case law is instructive. For instance, in *McManus v. Barnhart*, this Court reversed the decision of the decision of the Commissioner for failure to comply with SSR 83-20. No. 5:04-CV-67-OC-GRJ, 2004 WL 3316303, at *6-7 (M.D. Fla. Dec. 14, 2004). There, the Court noted that "the issue of onset is inextricably tied to the determination of disability in cases where the impairment is a slowly progressive condition that is not traumatic in origin." *Id.* at 6. Because of the tie between onset and the determination of disability, the Court concluded that "the most logical interpretation of SSR 83-20 is to apply it to situations where the ALJ is called upon to make a retroactive inference regarding disability involving a slowly

progressive impairment, and the medical evidence during the insured period is inadequate or ambiguous." *Id.* In those situations, the Court stated that "the ALJ should be required to obtain the advice of a medical advisor to assist the ALJ in making the determination from the available medical evidence of whether the slowly progressive impairment constituted a disability prior to the date last insured." *Id.* In *McManus*, the Court ultimately concluded that the plaintiff's impairment "was a slowly progressive one and that the ALJ was required to make a retroactive inference regarding the onset and existence of disability and, thus, SSR 83-20 is implicated." *Id.* at 7.

In *Caces v. Commissioner, Social Security Administration*, however, the Eleventh Circuit affirmed the decision of the Commissioner despite the lack of a medical advisor pursuant to SSR 83-20. 560 F. App'x at 939. There, the court specifically noted the ALJ's finding that the claimant "was not disabled prior to the date last insured based on ample, unambiguous medical evidence from both before and after the date last insured." *Id.* The court further stated that "[t]he plain language of SSR 83-20 indicates that it is applicable only after there has been a finding of disability and it is then necessary to determine when the disability began." *Id.* (citation omitted). Thus, "because the ALJ did not find that [the claimant] was disabled, and because that finding is supported by the evidence," the court held that "the ALJ did not err in failing to call a medical expert to determine an onset date of such a disability." *Id.*

Considering this precedent, the Court finds that if the record is insufficient to establish when/if any slowly progressing impairment(s) of nontraumatic origin became disabling, then SSR 83-20 requires an ALJ to utilize a medical advisor to determine the onset and/or existence of a claimant's disability. *See McManus*, 2004 WL 3316303, at *6. If, however, the record adequately supports a finding that the claimant was not disabled during the relevant period, then

there is no error for failing to utilize the services of a medical advisor pursuant to SSR 83-20. *See Caces*, 560 F. App'x at 939. Thus, the Court must assess (1) whether the ALJ made a finding of disability, (2) whether Plaintiff has any slowly progressing impairment(s) of nontraumatic origin, and (3) the adequacy of the record. *See Caces*, 560 F. App'x at 939; *McManus*, 2004 WL 3316303, at *6.

First, the ALJ specifically found that Plaintiff became disabled on March 9, 2013. (Tr. at 33). The first inquiry is, therefore, readily answered.

Second, it appears that Plaintiff, in fact, suffers from slowly progressing impairments of nontraumatic origin. Specifically, the ALJ found Plaintiff suffered from a number of severe conditions—some of which do not appear to be the result of a traumatic injury. (*See* Tr. at 29). For instance, before the established onset date of March 9, 2013, the ALJ found Plaintiff's impairment of hypertension to be severe. (Tr. at 29). Additionally, beginning on March 9, 2013, in addition to hypertension, the ALJ found other conditions to be severe—specifically, sleep apnea, atrial fibrillation, GI hemorrhage, late effects of CVA, cubital tunnel syndrome, and gout. (Tr. at 29). A number of these conditions also appear to be slowly progressing and nontraumatic in nature. (*See id.*).

On this point, Plaintiff specifically points to diagnoses and/or references in the medical record of plantar fasciitis, gout, sleep apnea, and atrial fibrillation as being slowly progressing impairments of nontraumatic origin. (*See* Doc. 21 at 13-14). A review of the record supports Plaintiff's contentions. For instance, medical records ranging from September 2009 to November 2013 show evidence of sleep apnea. (Tr. at 738, 831). Similarly, the record shows multiple diagnoses/assessments of gout in 2009, 2012, and 2013. (Tr. at 723, 740, 808, 836). Moreover, there are references to Plaintiff's plantar fasciitis in August 2012, before the

established onset date of disability, (Tr. at 585, 799), in addition to references after this time in March 2013, (Tr. at 348). In addition, while there is no apparent diagnosis of atrial fibrillation before March 9, 2013, medical records after this time seemingly indicate that Plaintiff had a "history" of atrial fibrillation, but that it was never treated medically. (Tr. at 575).

Furthermore, although not cited by Plaintiff as being a slowly progressing impairment of nontraumatic origin, the Court notes that there is a significant history of Plaintiff's hypertension throughout the medical evidence. (*See* Tr. at 580, 745, 831). Moreover, records from 2009 show evidence of Plaintiff's cubital tunnel syndrome, (Tr. at 745, 839), in addition to diagnoses of cubital tunnel syndrome in more recent records from 2013. (*See e.g.*, Tr. at 354, 831).

In looking at the record evidence, however, the Court notes that some of Plaintiff's conditions showed improvement at times. For instance, Plaintiff testified that his cubital tunnel syndrome improved after surgery. (*See* Tr. at 55). Similarly, as to Plaintiff's hypertension, medical records show that, while Plaintiff's blood pressure was still elevated, it improved somewhat with treatment. (*See* Tr. at 800). Notwithstanding the evidence that some of Plaintiff's conditions may have improved, the evidence nevertheless reflects that Plaintiff suffered from a number of conditions for an extended period of time. Moreover, the Court cannot conclude on the current record that any noted instances of improvement in these conditions necessarily precludes the conditions from being considered slowly progressing impairments. Thus, the Court is satisfied that Plaintiff suffered from slowly progressing impairments of nontraumatic origin.

The final question, then, is whether the evidence during the relevant period is inadequate or ambiguous. *See McManus*, 2004 WL 3316303, at *6. On this point, it is evident to the Court that the ALJ believed Plaintiff suffered from significant impairments beginning with Plaintiff's

first hospitalization for GI bleeding on March 9, 2013. (*See* Tr. 31, 348). In fact, the ALJ noted

that Plaintiff was hospitalized three times in March 2013 for rectal bleeding. (Tr. at 31).

Additionally, the ALJ noted that Plaintiff had a stroke in April 2013, in addition to a number of

other health issues after this time. (Tr. at 31). Moreover, the ALJ stated at the hearing:

> This is my assessment of the case. That at his date last insured, I see only one
> impairment. And that's his hypertension. And I notice shortly after that, starting
> in about March of 2013, he started having some significant other problems. How
> am I going to reach back to June of 2012 to establish disability before his insurance
> runs out? Give me some ideas.

(Tr. at 55).

Given the medical evidence of record, including Plaintiff's hospitalizations for rectal

bleeding and Plaintiff's stroke, it is certainly understandable why the ALJ found Plaintiff to be

disabled after March 9, 2013. Moreover, it is clear to the Court that the record supports a finding

that Plaintiff suffered from some of his severe impairments after March 9, 2013. (*See* Tr. at 29).

For instance, there is no record evidence that Plaintiff suffered from the severe impairments of

GI hemorrhage or late effects of CVA before March 9, 2013. These conditions only became

apparent after March 9, 2013 and, therefore, support the ALJ's conclusions regarding the

severity of these impairments after this time.

Notwithstanding this finding, however, the Court notes that the ALJ only found that

Plaintiff suffered from the severe impairments of sleep apnea, cubital tunnel syndrome, and gout

*after* March 9, 2013. (Tr. at 29). A review of the record, however, shows evidence of these

three impairments before March 9, 2013. For instance, medical records from as early as

September 2009 show that Plaintiff had possible sleep apnea. (Tr. at 738). Similarly, records

from 2009 show evidence of cubital tunnel syndrome. (Tr. at 745, 839). In fact, records show

that Plaintiff underwent a surgical procedure to correct his left cubital tunnel syndrome on July

23, 2009. (Tr. at 839). Moreover, records show Plaintiff was diagnosed with gout on multiple occasions before March 9, 2013. (Tr. at 723, 740, 808).

Furthermore, it is not readily apparent that Plaintiff's sleep apnea, cubital tunnel syndrome, and gout have any obvious relationship to Plaintiff's hospitalization for rectal bleeding or his stroke. For example, while Plaintiff had surgery to correct his *left* cubital tunnel syndrome, the neurologic problems associated with Plaintiff's stroke appear only to have affected Plaintiff's *right* side. (*See* Tr. at 575, 839). The ALJ did not sufficiently explain why he found Plaintiff's sleep apnea, cubital tunnel syndrome, and gout only became severe *after* March 9, 2013. (*See* Tr. at 29). Thus, the ALJ's decision to find these three impairments to be severe after March 9, 2013, but not before that date, is not adequately supported by the record.

Moreover, and vital to an analysis under SSR 83-20, all three conditions could be considered slowly progressing impairments of nontraumatic origin. As a result, the Court finds the ALJ's review of the evidence for the time period before March 9, 2013 to be inadequate. As it stands, the medical evidence of record for the relevant period is inadequate and ambiguous as to whether these impairments were disabling at some point before the established date of disability. At the very least, the Court finds that the ALJ did not have a "legitimate medical basis" to establish that these impairments were *not* disabling at some point prior to March 9, 2013. *See* SSR 83-20, 1983 WL 31249, at *3.

In sum, the ALJ made a finding that Plaintiff was disabled. (Tr. at 33). Additionally, the record supports a finding that Plaintiff suffers from slowly progressing impairments of nontraumatic origin and that the evidence during the relevant period is inadequate and ambiguous. Thus, the Court finds that the ALJ should have secured the services of a medical

advisor pursuant to SSR 83-20.  Accordingly, the Court finds that this case must be reversed and remanded for further findings of fact consistent with this Opinion and Order.

On remand, the Commissioner should obtain a medical advisor pursuant SSR 83-20 to assist the ALJ in determining the onset and/or existence of Plaintiff's disability prior to the date last insured.

## B. Plaintiff's Credibility

Plaintiff's next contention is that the ALJ erred in finding that he was not entirely credible in the period before March 9, 2013.  (Doc. 21 at 15).  Plaintiff argues that the ALJ failed to fully or properly evaluate his credibility pursuant to the regulatory factors.  (*See id*. at 15-17). Additionally, Plaintiff argues that the ALJ failed to articulate an adequate rationale for discounting his credibility.  (*See* Doc. 25 at 4-5).

Defendant disagrees, arguing that substantial evidence supports the ALJ's findings. (Doc. 22 at 11).  Defendant argues that the ALJ's finding that Plaintiff was not entirely credible before March 9, 2013 is supported by the record because the record shows only minimal complaints or abnormalities before this time.  (*Id.* at 12).

The Court notes that to establish disability based on testimony of pain and other symptoms, a plaintiff must satisfy two prongs of the following three-part test:  "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain."  *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.3d 1221, 1223 (11th Cir. 1991)).  After an ALJ has considered a plaintiff's complaints of pain, the ALJ may reject them, and that determination will be reviewed to determine if it is based on substantial evidence.  *Moreno v.*

*Astrue*, 366 F. App'x 23, 28 (11th Cir. 2010) (citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)). If an ALJ discredits the subjective testimony of a plaintiff, then he must "articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Wilson*, 284 F.3d at 1225 (internal citations omitted). Nevertheless, the Eleventh Circuit has stated that "[t]he question is not . . . whether [the] ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

The factors an ALJ considers in evaluating a plaintiff's subjective symptoms include:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186, at *3; *see also* SSR 16-3p, 2016 WL 1119029, at *7 (factors nearly identical to SSR 96-7p); *Moreno*, 366 F. App'x at 28 (citing 20 C.F.R. § 404.1529(c)(3)). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote*, 67 F.3d at 1562.

In this case, the Court finds that the ALJ did not articulate explicit or adequate reasons for discrediting Plaintiff's subjective testimony. *See Wilson*, 284 F.3d at 1225. Instead, the ALJ only summarized the medical evidence of record without specifically stating any reasons why Plaintiff's testimony was not entirely credible. (Tr. at 31-32).

On this point, the Court notes that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). Nevertheless, this Court has declined to affirm the ALJ's decision when it "does not shed any meaningful light on the reasons for discounting the plaintiff's testimony." *Robinson v. Astrue*, No. 8:08-cv-1824-T-TGW, 2009 WL 2386058, at *3 (M.D. Fla. Aug. 3, 2009). Moreover, this Court has previously distinguished summarizing evidence from analyzing it. *See Cole v. Comm'r of Soc. Sec.*, No. 8:11-cv-1836-T-33MAP, 2013 WL 440576, at *4 (M.D. Fla. Jan. 17, 2013), *report and recommendation adopted sub nom.*, *Cole v. Astrue*, No. 8:11-cv-1836-T-33MAP, 2013 WL 436179 (M.D. Fla. Feb. 5, 2013).

For instance, in *Robinson v. Astrue*, this Court reversed and remanded the case when the ALJ's statements were "too general to permit meaningful judicial review." 2009 WL 2386058, at *4. There, the ALJ's decision stated, in pertinent part, that the plaintiff's "[s]ubjective complaints are considered credible only to the extent that they are supported by the evidence of record. However, the allegations by the [plaintiff] as to the intensity, persistence, and limiting effects of his symptoms are not well supported by probative evidence and are not wholly credible." *Id.* The plaintiff complained that the ALJ "provided only boilerplate language to explain his credibility determination." *Id.* at *3. While the Court found that the ALJ stated more than boilerplate language, the Court nonetheless concluded that the ALJ's additional language did not "shed any meaningful light on the reasons for discounting the plaintiff's testimony." *Id.*

The Court stated that "[a]lthough I have read the entire transcript, I simply cannot discern what facts the law judge had in mind when he . . . discounted the plaintiff's testimony." *Id.* at *4. Thus, because the ALJ did not state sufficient facts to discount the plaintiff's credibility, the Court found that a remand was warranted. *See id.*

Similarly, in *Cole v. Commissioner of Social Security*, this Court was unpersuaded by the ALJ's summarization of the evidence without a corresponding analysis. 2013 WL 440576, at *4. Specifically, while not in the context of a credibility determination, the Court noted that, "although the ALJ has spent a good deal of time summarizing the opinions of [the plaintiff's] other treating and consultative physicians, the ALJ spent very little time analyzing how those opinions affected his determinations." *Id.* Ultimately, the Court reversed and remanded, in part, based on the ALJ's failure to explain the consideration of the plaintiff's treating and consultative physicians. *See id.*

This reasoning is consistent with other district courts in the Eleventh Circuit. *See Johnson v. Colvin*, No. 2:13-CV-776-TFM, 2014 WL 2920847, at *4 (M.D. Ala. June 27, 2014). In *Johnson v. Colvin*, another case not specifically dealing with a plaintiff's credibility determination, the court found that rote recitation of the medical evidence was not a substitute for articulating reasons for discounting a treating physician's opinion. *Id.* The court found that the ALJ's conclusory analysis was deficient as a matter of law. *Id.* The court stated that while "[t]he facts recited by the ALJ might support reasons," the ALJ, nevertheless, "did not articulate his reasons." *Id.* The court stated "[i]t is the responsibility of the ALJ to conduct the appropriate legal analysis and his written decision must include sufficient reasoning to permit the court to determine he has done so." *Id.*

In the present case, like *Robinson*, the Court finds that the ALJ's statements were "too general to permit meaningful judicial review."  2009 WL 2386058, at *4.  Specifically, in support of the credibility determination, the ALJ simply summarized the medical evidence and then stated:

> In sum, prior to March 9, 2013, the above residual functional capacity assessment is supported by the totality of the evidence.  It is evident from the record that, prior to March 9, 2013, the claimant was capable of performing work-related activities as consistent with the above established residual functional capacity.  The only severe impairment established before June 30, 2012, the date last insured, was hypertension.  The claimant's other impairments were not established until March 2013 and that is too far to relate the impairments back to June 30, 2012.  Consequently, prior to March 9, 2013, there was no legally supportable basis for disability and preclusion of all work activity as within the meaning of the regulations.

(Tr. at 32).

As in *Robinson*, the Court has reviewed the entire transcript.  *See* 2009 WL 2386058, at *4.  It is not clear to the Court what facts the ALJ had in mind when he discounted Plaintiff's testimony.  *See id.*  Thus, like *Robinson*, because the ALJ did not state sufficient facts to discount Plaintiff's credibility, the Court finds that a remand is warranted.  *See id.*

Moreover, while the *Cole* and *Johnson* decisions do not address a credibility determination, but instead address the weight the ALJ gave to the opinions of the plaintiffs' treating physicians, the Court finds the reasoning from these cases to be highly persuasive.  Specifically, as those cases make clear, ALJs are required to explain their consideration of issues with analysis, not simply summarize medical evidence.  *See Cole*, 2013 WL 440576, at *4; *Johnson*, 2014 WL 2920847, at *4.  As such, the Court finds that the ALJ's rote recitation of the medical evidence here is not a substitute for articulating reasons for discounting Plaintiff's credibility.  *See Johnson*, 2014 WL 2920847, at *4.  While a summarization of the evidence likely provides facts in support of reasons to discount Plaintiff's credibility, the ALJ did not

articulate his reasons. *See id.* Moreover, because the ALJ did not state specific reasons for discounting Plaintiff's credibility, it is unclear whether the ALJ considered any of the factors for determining Plaintiff's credibility. *See* SSR 96-7p, 1996 WL 374186, at *3. Thus, the Court cannot find that the ALJ articulated explicit and adequate reasons for discounting Plaintiff's credibility. *See Wilson*, 284 F.3d at 1225.

Accordingly, the ALJ's credibility determination of Plaintiff for the time period prior to March 9, 2013 is reversed and remanded. Upon remand, the ALJ must state explicit and adequate reasons in making a credibility determination of Plaintiff.

### C. Plaintiff's Remaining Arguments

Plaintiff's remaining arguments focus on a number of issues that cannot be resolved until it is clear to the Court that the ALJ properly considered the entire medical evidence of record, including any evidence from a medical advisor and a review of Plaintiff's credibility. Because a re-evaluation of this evidence may impact the analysis of other elements of the ALJ's Decision, the Court finds that any ruling on Plaintiff's remaining arguments would be premature at this time. Upon remand, the ALJ must reevaluate the entire medical evidence of record in evaluating Plaintiff's case.

## III.     Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the decision of the ALJ is not supported by substantial evidence.

Accordingly, the Court hereby **ORDERS** that:

1) The decision of the Commissioner is **REVERSED AND REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for the Commissioner (1) to secure the services of a medical advisor pursuant to SSR 83-20 and (2) to articulate explicit and adequate reasons in making a credibility determination of Plaintiff.

2) The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

3) If Plaintiff prevails in this case on remand, Plaintiff must comply with the Order (Doc. 1) entered on November 14, 2012, in Misc. Case No. 6:12-mc-124-Orl-22.

**DONE AND ORDERED** in Fort Myers, Florida on September 28, 2017.

_____

MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties